# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES HAVASSY,<br>          Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ FINANCIAL SERVICES USA, LLC,<br>          Defendant. | No. 5:19-cv-01617 |

**O P I N I O N**
**Defendant's Motion for Partial Judgment on the Pleadings, ECF No. 25 - Granted (As to Count Two, only)**

**Joseph F. Leeson, Jr.**                                                                                                  **January 6, 2020**
**United States District Judge**

## I.    INTRODUCTION

James Havassy had his identity stolen by an individual. That individual utilized Havassy's identity to purchase a Mercedes-Benz in Colorado. Havassy then initiated the above-captioned action and filed a two-count amended complaint against Mercedes with Count One being a Fair Credit Reporting Act (FCRA) claim and Count Two being a common law negligence claim. Mercedes brings this motion for judgment on the pleadings for Count Two only. For the following reasons, Mercedes' motion for judgment on the pleadings is granted.

## II.   BACKGROUND

Plaintiff alleges the following facts:

On or around June 20, 2017, an individual, without Havassy's knowledge or consent, opened an auto loan account with Mercedes. Pl. Am. Compl. ¶ 7, ECF No. 7. The individual then used the account to purchase a Mercedes at a dealership in Colorado Springs, Colorado. *Id*. at ¶

8. The individual purchased the vehicle for $73,078, with no money down, and no trade-in. *Id*. at ¶ 10. Mercedes funded the account the individual opened. *Id.* Havassy asserts the opening of the account by the individual should have immediately alerted Mercedes the account was fraudulent. *Id*. at ¶ 9. He further asserts he did not benefit from the opening of the account. *Id*. at ¶ 11.

After the car purchase in June of 2017, Mercedes reported the account on Havassy's credit reports with an outstanding balance of $73,078. *Id*. at ¶ 12. After approximately three months, on or about September 29, 2017, Todd Wolfe, a representative from the Mercedes fraud department, contacted Havassy to inform him Mercedes believed he was a victim of identity theft. *Id*. at ¶ 13. After notifying Havassy of the suspected identity theft, Mercedes continued to report the account on Havassy's credit reports and additionally began to report the account as a negative payment history. *Id*. at ¶ 14. This reporting continued from September 2017 to November 2017, then Mercedes began to report the account as a charge-off. *Id*. at ¶ 15.

In an attempt to remedy the identity theft, Havassy disputed the debt with all three consumer reporting agencies (CRAs), and also with Mercedes. *Id*. at ¶ 16. From June 2017 to November 2017, Plaintiff submitted disputes to all three CRAs detailing he was a victim of identity theft. *Id*. at ¶ 17. In total, there were nine disputes, all of which were forwarded to Mercedes. *Id*. at ¶ 18.

Mercedes responded to Havassy in December of 2017, acknowledging the fraudulent account and informing Havassy it would delete the account from his credit reports. *Id*. at ¶ 22. However, Mercedes continued to report the account to Havassy as a charge-off with a negative payment history through July of 2018. *Id*. at ¶ 23, 24. Resultantly, Havassy suffered damages in lost credit opportunities, a negative credit report, and distress. *Id*. at ¶ 25, 26.

Havassy filed a two-count complaint on April 15, 2019, and then amended his complaint on May 17, 2019. After the conclusion of discovery, Mercedes filed this motion for judgment on the pleadings.

## III. LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains . . . and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). A motion for judgment on the pleadings is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). Accordingly, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

**IV. ANALYSIS**

Mercedes argues the FCRA preempts Havassy's common law negligence claim, or, in the alternative, Mercedes owed no duty to Havassy. Havassy counters on the basis the FCRA preemption is limited to credit reporting and does not preempt conduct independent of the handling of credit reporting disputes. For the following reasons, the Court grants Mercedes' motion for judgment on the pleadings.

**A. Mercedes owed no duty to Havassy because there was no contractual or special relationship**

The arguments presented by the parties are first premised on 15 U.S.C. § 1681s–2(b), a provision of the FCRA that regulates how the furnishers of credit information must respond when they are given notice of a dispute over consumer credit records. Section 1681s–2(b) provides, in relevant part:

(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b).

If a furnisher fails to comply with these requirements, then Section 1681n and Section 1681o "authorize[ ] consumers to bring suit for damages caused by a furnisher's . . . breach" when that breach is willful or negligent, respectively. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014). First, however, a consumer must notify the [CRA] of the disputed item and, in turn, the CRA must give notice to the furnisher that provided the disputed credit information. *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 672 (E.D. Pa. 2015). Ultimately, to state a claim in a suit arising under § 1681s–2(b), "a plaintiff must allege (1) that he notified a [CRA] of the dispute under § 1681i, (2) that the CRA notified the party who furnished the information; and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." *Id*. (citing *Taggart v. Norwest Mortg., Inc.*, No. 09–1281, 2010 WL 114946, at *9 (E.D. Pa. Jan. 11, 2010)).

Section 1681t(b)(1)(F) of the FCRA states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . .

section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Although not yet addressed by the Third Circuit, several other Circuit Courts have held that § 1681t(b)(1)(F) preempts all state and common law claims against furnishers of information with respect to all subject matter regulated under § 1681s-2. *See, e.g., Purcell v. Bank of Am.*, 659 F.3d 622, 625–26 (7th Cir. 2011) (finding defamation claim preempted by § 1681t(b)(1)(F)); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011) (same); *Marshall v. Swift River Academy, LLC*, 327 F. App'x 13, 15 (9th Cir. 2009) (same); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (finding state libel and false light invasion of privacy claims to be preempted by § 1681t(b)(1)(F)).

Multiple district courts within the Third Circuit have likewise adopted this conclusion and found that Section 1681t(b)(1)(F) preempts both state statutory and common law claims against furnishers of information acting under Section 1681s-2. *Lalonde v. Bank of Am., N.A.*, No. 16-1586, 2016 WL 7734690, at *2 (W.D. Pa. Dec. 15, 2016), *report and recommendation adopted by* 2017 WL 104965 (W.D. Pa. Jan. 11, 2017); *Prukala v. TD Bank USA*, No. 16-0894, 2016 WL 6191912, at *3 (M.D. Pa. Oct. 24, 2016); *Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at *4 (E.D. Pa. May 9, 2016); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 543 (E.D. Pa. 2015); *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014); *Goins v. MetLife Home Loans*, No. 12-6639, 2014 WL 5431154, at *6–7 (E.D. Pa. Oct. 24, 2014); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 451 (D.N.J. 2010); *Cosmas v. Am. Exp. Centurian Bank*, 757 F. Supp. 2d 489, 500–01 (D.N.J. 2010).

Havassy states his common law negligence claim is outside the confines of preemption because FCRA preemption is for furnishers of information. He states his common law

negligence clam is based on negligent conduct related to the initial opening of the fraudulent account and direct communications between the parties. He cites to *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437 (2d Cir. 2015), to support his theory.

In *Galper*, the plaintiff brought a claim under the FCRA and a New York state statute on the basis the defendant's employees, and money launderers, utilized her identity in a scheme to defraud Medicare. *Id*. at 442. The Southern District of New York dismissed the plaintiff's state law claim on the basis the FCRA preempted the plaintiff's claims for identity theft pursuant to New York's Fair Credit Reporting Act. *Id*. at 443. The issue pertained to whether the plaintiff's claims were "with respect to" the responsibilities of persons who furnish information to consumer reporting agencies. *Id*. at 442. On appeal, the Second Circuit reversed because the role of § 1681t(b)(1)(F) focuses on "the preemption of laws that regulate the responsibilities of persons who furnish information to consumer reporting agencies." *Id*. at 447. The Second Circuit reasoned, "[i]n this statutory context, the phrase 'relating to' is not used to describe the scope of preemption. Instead, the phrase exists as a shorthand reference to describe the subject matter governed by § 1681s–2." *Id*. As such, the Second Circuit allowed the plaintiff's state law claim to continue because it did not concern the defendant's responsibilities as a furnisher. *Id*. at 449.

While Havassy presents a novel argument, *Galper* is inapposite in this instance. The plaintiff in *Galper* brought claims under New York's Fair Credit Reporting Act, a state statute addressing identity theft; here, Havassy's claim is for common law negligence. The Second Circuit in *Galper* does not address the issue of whether Mercedes owed a duty to Havassy. However, this Court's own research indicates that in the State of New York, the venue of *Galper*, for a common law claim of negligence to proceed, there must be a contractual or special relationship. *See Gesell v. First Nat'l City Bank*, 260 N.Y.S.2d 581, 581–82 (N.Y. App. Div.

7
010620

1965). Moreover, the Eastern District of Pennsylvania has ruled a party must have a contractual or special relationship in order for a common law negligence claim to proceed.

Absent any business or legal relationship with Havassy, Mercedes owed no duty to him. *See Fink v. Corp. Liaison, LLC*, No. 12–3431, 2013 WL 1742474 (E.D. Pa. April 23, 2013). In *Fink*, the plaintiffs loaned $300,000 to the defendants. *Id*. at 1. The plaintiffs loaned the money by a wire transfer to the defendants' Citibank account. *Id*. As security for the loan, the defendants presented to the plaintiffs what appeared to be a $390,000 Citibank letter of credit, which the defendants said was backed by a $1,000,000 Citibank certificate of deposit. *Id*. When the defendants defaulted on the loan, the plaintiffs contacted Citibank to collect on the letter of credit and Citibank notified the plaintiffs there was no letter of credit nor certificate of deposit. *Id*. The plaintiffs brought suit against Citibank, alleging Citibank breached a duty to them to prevent people, such as the defendants, from using the Citibank financial "platform" for fraudulent purposes, to detect and eliminate such fraudulent accounts, and to train and supervise its employees to keep the financial platform free of fraudulent accounts and to communicate information about such accounts appropriately with other departments within Citibank, particularly whichever department paid the plaintiffs' wire. *Id*. However, on a motion to dismiss, the court dismissed the claims against Citibank because "none of the facts alleged allow[ed] the Court to infer that Citibank had the sort of relationship with the [p]laintiffs from which any such recognized or recognizable duty would arise. Without a duty of care to [p]laintiffs, Citibank [could not] be held liable under a negligence theory." *Id*. at 4.

The court in *Fink* relied upon *Eisenberg v. Wachovia Bank*, 301 F.3d 220 (4th Cir. 2002), in its holding. In *Eisenberg*, the plaintiff was duped into believing that he was investing money with someone at Bear Stearns, a large financial securities firm. *Id*. at 222. The perpetrator of the

fraud set up an account at the defendant-bank bearing the name "Douglas Walter Reid dba Bear Stearns." After the plaintiff wired money to that account, he learned that Mr. Reid had no affiliation with Bear Stearns and, in fact, had simply defrauded him. The plaintiff then sued the bank, claiming that it was negligent in allowing Mr. Reid to open the account in that name without ensuring he was authorized to do so and also in generally allowing the fraudulent use of its accounts. *Id*. In holding that the bank had no duty to the plaintiff, the Fourth Circuit Court of Appeals cited numerous cases from jurisdictions across the country in which courts have held that, absent special circumstances, banks do not have a duty of care to noncustomers with whom they have no direct relationship. *Id*. at 225; *see Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 815 (Colo. Ct. App. 1999); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998); *Miller–Rogaska, Inc. v. Bank One*, 931 S.W.2d 655, 664 (Tex. App. 1996); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 760–63 (Cal. Ct. App. 1996); *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 764–65 (Mich. Ct. App. 1981); *Pa. Nat'l Turf Club, Inc. v. Bank of W. Jersey*, 385 A.2d 932, 936 (N.J. Super. Ct. App. Div. 1978).

Here, there is no evidence to suggest that Mercedes owed a duty to Havassy. At the time of the identity theft, there was no contractual or special relationship between Havassy and Mercedes which would warrant a duty on the part of Mercedes. Havassy's theory is similar to the theories posited in *Fink* and *Eisenberg*, where the plaintiffs sought better detection capabilities for fraud on the part of the defendants. The cases Havassy cites to, *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996) and *Nat'l Union Fire Ins. Co. of Pittsburgh v. Raczkowski*, 764 F.3d 800, 803 (8th Cir. 2014), are inapposite because they are outside the jurisdiction of this Court and are in the minority position on this legal question. The Eighth Circuit in *Raczkowski*

recognized this minority position and stated, "*Patrick* is somewhat of an outlier, and other courts faced with this issue have held that there is no relationship between the parties that could establish a duty." *Raczkowski*, 764 F.3d at 803 (citing *Zabka v. Bank of America Corp.*, 131 Wash. App. 167, 127 P.3d 722, 724 (Wash. Ct. App. 2005) ("Many other jurisdictions have held that third party non-customers are not owed a duty of care by a bank, absent a direct relationship or statutory duty")). Similar to the plaintiffs in *Fink* and *Eisenberg*, there is no contractual or special relationship that creates a duty. Absent that relationship, Havassy's claim cannot proceed. Accordingly, Mercedes' motion for judgment on the pleadings for Count Two is granted.

## V. LEAVE TO AMEND

Havassy argues in the event his amended complaint is factually deficient, he requests leave to amend to conform to facts gleaned during discovery. However, this Courts August 16, 2019 Scheduling Order states, "Any motion to amend the pleadings shall be filed no later than thirty (30) calendar days before the close of fact discovery." Fact discovery concluded on November 13, 2019, and the trial is scheduled for February 10, 2020. Moreover, as Mercedes did not owe Havassy a duty, any attempt to amend would be futile. *See Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). Thus, Havassy's motion for leave to amend is denied.

## VI. CONCLUSION

For the reasons discussed above, Mercedes' motion for judgment on the pleadings on Count Two of Havassy's amended complaint is granted. Havassy's motion for leave to amend is denied. A separate order follows.

10
010620

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge